IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 23-cr-00486-DDD

UNITED STATES OF AMERICA,

        Plaintiff,

v.

3.      HERBERT SIDNEY HOWARD,

        Defendants.

---

**MR. HOWARD'S MOTION FOR VARIANCE OR DOWNWARD DEPARTURE**

---

Herbert Howard, by and through his counsel, Adam Frank of the Frank Law Office, hereby respectfully requests that this Honorable Court grant him a variance or downward departure and sentence him to either 36 months concurrent to any sentence he may receive in his pending state cases, or to 23 months to account for the 13 months of time served while this case has been pending that the Bureau or Prisons will likely not credit against his sentence. As grounds, he states the following:

Introduction

Mr. Howard seeks a variance on two grounds: First, based on the extensive mitigating factors present in his case; and second, based on the United States Sentencing Commission's policy statement in USSG § 5G1.3(d) that, where a person is subject to a pending period of incarceration, the sentencing court should consider whether imposing a concurrent or partially concurrent sentence is necessary "to achieve a reasonable punishment for the instant offense." Based primarily on the first ground, Mr.

1

Howard seeks a variant sentence of 36 months. Based primarily on the second ground, he asks that the Court either impose his sentence concurrently or reduce the sentence the Court would otherwise impose by the approximate amount of time he has already served that he likely will not receive credit for from the Bureau of Prisons. Pursuant to the Unted States Sentencing Guidelines and accompanying commentary, this second ground is also a potential basis for a downward departure.

<u>Mitigating Circumstances</u>

As the Mitigation Report attached to the Presentence Report describes in detail, Mr. Howard has had an exceptionally difficult life, stemming from circumstances beyond his control. However, the recent birth of his son, which occurred functionally contemporaneously with the events underlying this case, has given Mr. Howard a new sense of meaning in his life and a concrete reason to conduct himself as an upstanding citizen going forward. And as the attached letters of support demonstrate, despite the difficulties Mr. Howard has endured, his family has now come together to be there for him and will provide him a strong support network upon his release. Given these reasons, the Court should impose a variant sentence of 36 months.

Mr. Howard was born into incredibly difficult circumstances. At the time of Mr. Howard's birth, his mother, Tiffany Wilson, was only 15 or 16 years old. His father, Herbert Howard Jr., did not stay in a relationship with Ms. Wilson. Due to this fact, as well as his father's subsequent incarceration for much of Mr. Howard's childhood, Mr. Howard's father was not a presence in his childhood. Instead, his only actual parent was his teenaged mother. This circumstance was made substantially more difficult by the fact that Mr. Howard's mother was soon diagnosed with lupus, a debilitating autoimmune disease.

Despite her age, Mr. Howard's mother was loving and caring. Family members recall Mr. Howard being a "mama's boy"[1] who "always wanted to be with his mama." However, as Ms. Wilson's lupus progressed, she became less and less able to care for or parent Mr. Howard. Instead, Mr. Howard was often forced into a role reversal, having to become the caretaker for his very ill mother.

Ms. Wilson's lupus often rendered her immobile, exhausted, and in extreme pain. Such symptoms are sadly common with the disease. *See* https://medlineplus.gov/lupus.html. As Mr. Howard's family recalls, Ms. Wilson's lupus was diagnosed when Mr. Howard was 7 or 8 years old, and it began progressing rapidly. This tragedy caused a significant change in Mr. Howard. All of a sudden, as his family recalls, Mr. Howard "wasn't how he used to be, [he wasn't] playful anymore, [and] maybe he started getting in trouble then." As a young child forced into a caretaker role for his own mother, Mr. Howard "would help her get off the medical bus. She couldn't move around the house so [he] would clean and cook . . . ever since I can remember [he] was cooking and cleaning." When Ms. Wilson was having a lupus flare, Mr. Howard "didn't want her to get up. He would bring her water, juice," or whatever else she needed. While Mr. Howard caring for his mother was admirable, at the same time, Ms. Wilson's illness meant that "at eleven, twelve years old he was pretty much on his own." Instead of developing as a child normally would with a stable home environment, Mr. Howard was thrust into an adult world he was not equipped to manage.

With Mr. Howard "trying to take care of his mom, and because she couldn't get him to school," Mr. Howard's education was stunted. Nobody was present to take Mr. Howard to school, leading to a significant decline in his attendance. Further, due to Mr. Howard's mother's lupus, she was not able to work. While she received disability payments, these were insufficient for her to

---

[1] All quotes from Mr. Howard's family members contained herein are taken from the Mitigation Report Mr. Howard has filed with the Court.

3

maintain a stable home for Mr. Howard, and Mr. Howard experienced significant periods of food insecurity and housing insecurity. With his mother unable to provide for him, Mr. Howard bounced from family member to family member, with each move making him feel less and less wanted and worse and worse about himself as a person. These emotions, forced onto a twelve-year-old without the emotional tools to even begin to process them, caused Mr. Howard to develop a tragically negative self-image, in which even as a child he felt like a "black cloud" that nobody wanted.

With no stability coming from his family, Mr. Howard sought it elsewhere. Older "friends" who were involved in criminal activity took Mr. Howard in. These "friends" made sure Mr. Howard had a place to sleep, food to eat, and gave him a sense of belonging. But they also introduced him to and normalized a compromised lifestyle in which substance use was *de rigueur* and where criminal activity was a reasonable way to support oneself. They also had no interest in encouraging school attendance. This led to Mr. Howard's significant learning deficits going untreated throughout his childhood. Without a caring parent, a stable home, a steady education, support for his intellectual disabilities, or even just one single supportive adult providing positive guidance, Mr. Howard soon found himself ensnared in the criminal justice system and incarcerated.

Then Mr. Howard's mother died while he was in jail. While lupus does not have to be fatal, for Ms. Wilson it was. In 2016, she passed away while Mr. Howard was confined at the Giddings State School in Texas. The authorities there refused to let Mr. Howard attend his mother's funeral. Instead, they moved him to solitary confinement for a few hours, provided him with a single 45-minute meeting with a grief counselor, and put him back into the general population of juvenile detention – on the same day they told him of his mother's death. No relatives visited him. Nobody supported him.

To cope, Mr. Howard became numb. He "did not cry for nine months after my mother died." Instead, he blamed himself, beating himself up for causing her pain by getting in trouble. He stopped

4

being able to sleep. He started having panic attacks. His already stunted emotional development was frozen in its tracks. As a result, when Mr. Howard was released from juvenile detention, he was wholly unprepared for independent adult life. He tried to hold down basic fast food-type jobs but could not. He used what money he had on substances that could help him quell the swirl of negative self-talk that otherwise dominated his consciousness. While Mr. Howard learned well how to present a calm and implacable façade, his cousin recalls that after Mr. Howard's release, the cousin would find Mr. Howard crying in a room by himself. Though the cousin claims he tried, Mr. Howard was not able to talk about what was going on inside him.

What has changed for Mr. Howard has been the birth of his son. As his family has noticed, they "hadn't seen him care about anybody since he cared about his mom." But now, "Whenever he calls, he just calls to see how his son is doing. All that matters to him is how his son is doing." Both common sense and published research tell that becoming a parent is the type of event that can serve as a turning point in a person's life. This has been the case for Mr. Howard. He is motivated to be the present, loving father that he did not have. He has a plan to provide for his family, intending to get a commercial driver's license upon his release and to work in this capacity for his grandfather at a trucking business. More than anything, he wants to be a stable, loving provider for his son. This significant motivation, combined with the exceptionally mitigating circumstances of his youth and adolescence, provide a strong justification for the requested variant sentence.

<u>Rationale for Concurrent Sentencing</u>

As reflected in the Presentence Report, Mr. Howard was arrested related to this case on July 19, 2023, but then released without charge on August 8, 2023. On November 16, 2023, Mr. Howard was indicted in the present case and an arrest warrant issued. He was arrested based on this warrant

5

on November 30, 2023, in Texas. At the time of his arrest, Mr. Howard was found with a weapon, leading to a state charge in Texas. That charge, along with a previous one, remains unadjudicated.

Because of the new state charge, Mr. Howard was booked into the local jail as a state inmate, not a federal one. Mr. Howard was then transferred to federal custody based on a writ. Because of how Mr. Howard's arrest played out, as reflected in the Presentence Report he is considered a state detainee present on a writ and not a federal detainee. Mr. Howard seeks a concurrent or reduced sentence in order to ensure that this circumstance does not cause him to serve significantly more time in custody than his similarly situated co-defendants.

Mr. Howard merits a sentence comparable to that of his equally culpable co-defendants. Mr. Howard's co-defendants were arrested at approximately the same time he was. Each co-defendant has spent a comparable amount of time in jail while this case has been pending. Mr. Howard's co-defendants will receive credit for the time they have been serving in federal custody against their pending sentences from this case. However, based on the quirk of timing described above, Mr. Howard may not.

In order for Mr. Howard to receive credit for time served equivalent to that of his co-defendants, the Court would need to order that Mr. Howard's sentence be concurrent with his pending cases in state court. Otherwise, pursuant to 18 U.S.C. § 3584(a), Mr. Howard's sentence will be treated as consecutive and, pursuant to 18 U.S.C. § 3585(b), any time eventually credited to Mr. Howard's potential future state sentence will not be credited against this one. This would result in Mr. Howard potentially being treated significantly differently from his co-defendants. The Court should avoid this disparity. *See* 18 U.S.C. § 3553(a)(6).

Instead, to both prevent this disparity and to provide for just punishment, the Court should order that Mr. Howard's sentence be concurrent to any that may be entered in his pending state cases.

6

No information about the pending state cases was contained in discovery; as a result, neither undersigned counsel nor the Court have any information about the severity of those cases, the likelihood of a conviction, or the anticipated length of any possible sentences. If the Court orders a concurrent sentence here, the state court in Texas would remain free to order any sentence it imposed to run consecutively or concurrently with the sentence from this case. That will permit the judge who has the information about the pending charges to make the ultimate decision about what punishment the charges merit in the event of a conviction. Conversely, if the Court here orders a consecutive sentence, Mr. Howard may receive no credit for the 407 days he has spent in custody since his November 2023 re-arrest while his co-defendants do. Only a concurrent sentence can assure the prevention of what would be a manifest injustice.

Under the United States Sentencing Guidelines, the Court must exercise its discretion in a situation such as this when deciding whether to impose a concurrent or a consecutive sentence. Pursuant to the policy statement contained in USSG § 5G1.3(d), in a case where a defendant faces "an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." To determine which to impose, the Court must consider:

> (i) the factors set forth in 18 U.S.C. § 3584 (referencing 18 U.S.C. § 3553(a));
>
> (ii) the type (e.g., determinate, indeterminate/parolable) and length of the prior undischarged sentence;
>
> (iii) the time served on the undischarged sentence and the time likely to be served before release;
>
> (iv) the fact that the prior undischarged sentence may have been imposed in state court rather than federal court, or at a different time before the same or different federal court; and

7

> (v) any other circumstance relevant to the determination of an appropriate sentence for the instant offense.

USSG § 5G1.3 cmt. 4(A); *Unted States v. Hurlich*, 293 F.3d 1223, 1229-30 (10th Cir. 2002); *United States v. Lester*, 2023 U.S. App. LEXIS 17254 *5-*6, 2023 WL 4417506 (10th Cir. July 10, 2023). Upon consideration of these factors,

> it may be appropriate for the court to downwardly depart. This may occur, for example, in a case in which the defendant has served a very substantial period of imprisonment on an undischarged term of imprisonment that resulted from conduct only partially within the relevant conduct for the instant offense. In such a case, a downward departure may be warranted to ensure that the combined punishment is not increased unduly by the fortuity and timing of separate prosecutions and sentencings.

USSG § 5G1.3 cmt. 4(E).

Mr. Howard's case is why this comment was written. Based on conduct that does not meet the definition of relevant conduct but which is plainly related to this case – *i.e.*, Mr. Howard receiving new state charges based on an item seized during his re-arrest for these charges – Mr. Howard has served an additional 407 days as a state inmate present in federal court on a writ and not as a federal inmate like his co-defendants. Facets of federal sentencing law cited herein mean that, without action by this Court, Mr. Howard will not receive credit for this time while his co-defendants will. This Court should take action to prevent such an outcome, as indicated by the commentary to the guidelines.

The simplest way for the Court to ensure equal treatment for Mr. Howard and his co-defendants is for the Court to order Mr. Howard's sentence to be concurrent to any as-yet-unimposed state sentences. Should the Court enter such an order, Mr. Howard will receive credit for the time he has spent in custody based on the pendency of this case against this sentence. Then, if Mr. Howard suffers a conviction in a pending state case, the state court judge, being appraised of the facts of that case, would have the ability to impose a sentence that appropriately provides for incremental

8

punishment for the additional conviction. Alternatively, the Court could use the procedure described in USSG § 5G1.3(b)(1) and "adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of incarceration will not be credited to the federal sentence by the Bureau of Prisons." This would lead to reducing the Court's intended sentence by 13 months. Whichever route the Court chooses, the policy statements contained in the Guidelines strongly suggest that the Court should adjust Mr. Howard's sentence to ensure his sentence has a similar effect on him as his co-defendants' sentences have on them.

A consideration of the factors listed in USSG § 5G1.3 cmt. 4(A) leads to the same conclusion. First, for the reasons described in the mitigation section above, Mr. Howard merits a variant sentence under the factors described in 18 U.S.C. § 3553(a). Second, the unknown nature of the pending state cases and possible sentences render it advisable to impose a sentence that permits a future judge to consider the facts of those cases and impose proportionate additional incremental punishment. Third, through the quirk of timing described herein concerning Mr. Howard receiving a new state charge at the time of his arrest on this charge, Mr. Howard has served an exceptionally long period of time as a state inmate present in federal court on a writ, and he is set to serve even more such time upon his return to state custody at the conclusion of this case. Fourth, the fact that this undischarged potential sentence will come from state court should not operate to significantly increase the amount of time Mr. Howard spends in custody. Fifth, for all the reasons stated herein and for all the reasons described in detail in the Mitigation Report Mr. Howard has submitted to the Court, the ends of sentencing will be properly and appropriately served by the Court either imposing a concurrent sentence or reducing the sentence it would otherwise impose by 13 months.

Wherefore, for the reasons stated herein, Mr. Howard respectfully requests that this Honorable Court grant his motion for a variance or downward departure and impose a sentence of either 36 months concurrent to his pending state cases or a sentence of 23 months.

Respectfully submitted, December 21, 2024.

*/s Adam Frank*
Adam Frank
Frank Law Office LLC
1133 N Pennsylvania Street
Denver, CO 80203
Telephone: (303) 800-8222
E-mail: adam@franklawoffice.com
*Attorney for Mr. Howard*

**Certificate of Service**

  I hereby certify that on December 21, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.  I further certify that a copy of the foregoing was served via electronic mail through the CM/ECF system, addressed to the following:

Brian Dunn
Brian.dunn@usdoj.gov

*/s Adam Frank*
Frank Law Office LLC